CASE 45—PETITION EQUITY—FEBRUARY 15.

# Tuggle vs. Gilbert, &c.

### APPEAL FROM GARRARD CIRCUIT COURT.

1. Where a testator was surety for a debt, and his executors, by fraud or negligence, fail to make the debt out of the principal, they are liable to the legatees for indemnity.

2. A decree cannot be regarded as final where the true amount to be made by the execution thereon is to be determined by future inquiry.

A. J. James, for appellant, cited 5 *Litt.*, 203; *Toller on Ex.*, 238; 1 *Mon.*, 249; 1 *J. J. M.*, 176; 2 *Dana*, 421.

S. Turner and M. L. Rice on same side.

A. A. Burton, for appellee, cited 1 *J. J. M.*, 498; 4 *Dana*, 404.

JUDGE ROBERTSON delivered the opinion of the court:

If the fraudulent or unfaithful conduct of the executors of Jesse Taylor subjected the slaves devised to his wife Lucretia to sale unnecessarily, when proper vigilance and fidelity might have made the debt out of the property of any of the principal debtors, those fiduciaries are equitably responsible for her indemnity. The decree of 1856 against those principals, then become insolvent, is no bar, even if final, to a decree against the executors also. If a decree against all four at the same time might have been proper, separate decrees against two of each class could not be prejudicial to any one of them. But the decree of 1856 was not final even as to the principal debtors; for, although it adjudged their liability for a specified amount, and authorized an execution therefor, yet it also directed an inquiry and report as to property of Dorton which had been attached, a final adjudication as to which would be necessary before the true amount to be made by executor could be judicially ascertained; and the same decree suggested that this must be ascertained as preparatory "to a final decree." Moreover, the decree of 1856 did not exonerate the executors, but ordered an inquiry into the estate of Dorton,

and several other matters, for the evident purpose of determining whether they might have made the debt out of him, and were guilty of bad faith or culpable negligence in not doing so, and, by their misconduct, saddling their chief beneficiary with a great portion of it, and which may, and probably will, be a dead loss to her unless they indemnify her. Besides, both decrees, if final, could not be enforced, and none of the parties can be prejudiced by the first.

That the executors knew that J. B. Dorton was principal, and Jesse Taylor only surety, is a fact indisputably established. That it was their fiducial duty to see that the burden should not fall on their testator's estate if they could, by proper conduct, avert it, is also incontestible. And, from a careful consideration of all the facts exhibited in the record, we are satisfied that had the executors not procrastinated payment or coercion by their own improper act in renewing the note on time on their own personal responsibility as additional sureties, and by afterwards appealing for more delay from the judgment when at last rendered; and had neither of them, in the meantime, tampered with Dorton's property for their joint benefit, and whereby he became ostensibly, and, perhaps, actually, insolvent, the debt could and would have been made out of the principal debtor, and never would have devolved on the widow of their testator's surety, whom it was their sacred duty to guard and protect. Although their signatures to the new note constructively made them personally liable, this was no payment, and was not considered as such by them. And even if it could have so operated, and had been so intended, they had no right, in good faith, to make such payments, aiding Dorton only, and, by retainer or otherwise, to reimburse or indemnify themselves out of their beneficiary's estate, when they could, if they would, have been relieved out of the estate of Dorton. White's mortgage on some of Dorton's land was no obstruction to the subjection of it to the payment of that debt. He would have released, and, if he had hesitated, could have been compelled.

Satisfied that Mrs. Taylor's slaves were sold in consequence only of the infidelity of her husband's executors, we are of the

opinion that they have no right to throw her on an insolvent principal for retribution; and the more especially as their improper interferences suspended remedies until that insolvency supervened, and the selfish conduct of one of them, Patton, helped essentially to hasten it. We therefore concur in the principle of the decree of 1860, holding the executors of Taylor personally responsible for the wrong done to Mrs. Taylor.

Nor do we see any valid objection to the amount decreed against them. The proceeds of the sale to Woodson and Adams were applied as a credit on the execution. And if a failure to enter a former credit, for the Word notes, seemed to make this sale necessary, it was the duty of the executors to have attended to it and prevented the sale, instead of conniving at and encouraging it. As the case is left open for final settlement of the executorial accounts, the failure to give them in the decree credit for a small balance which the master reported in their favor, is not reversible error. That balance may not be finally adjudged as due: And even if it shall be, there is no danger, in the mean-time, of losing it. The court can and will see to that.

Wherefore, the decree of 1860 is approved and affirmed.